UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DISTRICT at LEXINGTON

CRIMINAL ACTION NO. 08-22-KKC

UNITED STATES OF AMERICA,                                                        PLAINTIFF

V.         **PROPOSED FINDINGS OF FACT
           AND RECOMMENDATION**

CHARLES ANDRE MOSLEY and
TORI ANN RODRIGUEZ,                                                              DEFENDANTS

\* \* \* \* \* \* \* \* \* \*

## I.  INTRODUCTION

On February 6, 2008, a federal grand jury returned a two-count indictment against defendants Charles Andre Mosley and Tori Ann Rodriguez. Count 1 thereof charged that on or about October 1, 2007, and continuing through on or about February 6, 2008, the defendants conspired together to knowingly and intentionally possess with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of cocaine base (crack cocaine), a Schedule II controlled substance, in violation of 21 U.S.C. § 846; and Count 2 thereof charged that on or about January 16, 2008, the defendants did knowingly and intentionally possess with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of cocaine base (crack cocaine), a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1).  [DE #1].

On February 15, 2008, the defendants were arraigned on the foregoing charges, entered pleas of not guilty thereto, and this matter is scheduled for trial on April 21, 2008.  [DE ##15, 16].

Subsequently, on March 17, 2008, defendant Rodriguez, by counsel, moved to suppress all evidence obtained from the search of the defendants' residence located at 3646 Polo Club Boulevard, Lexington, Kentucky, on or about January 16, 2008 [DE #18]. On March 25, 2008, defendant Mosley, by counsel, moved to join in said motion to suppress [DE #21]; said motion to join was granted on March 26, 2008.

As grounds for this motion to suppress, defendants assert that the search of their residence was conducted pursuant to a search warrant that was not supported by probable cause or legal authority for said search; therefore, defendants contend that the search of their residence violated the Fourth Amendment and that all evidence obtained as a result of that search must be suppressed.

The United States has filed a response in opposition to the defendants' motion to suppress. [DE #20].

The undersigned Magistrate Judge conducted a suppression hearing on March 26, 2008. The United States was represented by Assistant United States Attorney Ron L. Walker, Jr.;defendant Charles Andre Mosley was present in person and was represented by J. Gregg Clendenin, Jr.; defendant Tori Ann Rodriguez was present in person and was represented by Joyce A. Merritt. This suppression hearing was transcribed by Barbara McDermott, contract court reporter. No evidence was presented by any of the parties at the suppression hearing; instead, the Magistrate Judge summarized, on the record, the factual background of this case, posed various questions to counsel, and heard argument of counsel in support of their respective positions on this matter.

This matter stands submitted for a report and recommendation to the district court on defendants' motion to suppress.

## II.  FACTUAL BACKGROUND

On January 15, 2008, Detective David Lewis, a police officer for the Lexington-Fayette Urban County Government, sought and obtained a search warrant from the Fayette District Court for a search of the premises known as 3646 Polo Club Boulevard, Lexington, Kentucky, defendants' residence.

In the *Affidavit in Support of and Petition of Search Warrant*, Detective Lewis stated that in early October of 2007, he had observed a black Dodge Magnum vehicle bearing Kentucky license plate number 293-GXB parked in front of a barber shop at 311 Race Street, that there had been several arrests in this area of Third and Race Streets involving illegal drug sales, and that he began

to see this vehicle frequent this location quite often during the day and night. Detective Lewis also stated that in November of 2007, Detectives Joseph Eckhardt and Walter Ridener, while investigating narcotics activity, observed this same vehicle at Winchester and Zesta Place and that they followed it to the 400 block of Smith Street where it parked in an area where subjects congregate to sell illegal narcotics. Detective Lewis stated that in November of 2007, he conducted a police computer check on this vehicle bearing Kentucky tags 293-GXB and learned that the registered owners were Charles Mosley and Tori Rodriguez and that their address was 3646 Polo Club Boulevard, Lexington, Kentucky.

>Detective Lewis further states in his affidavit, as follows:

>. . . The affiant conducted a record check of the subject and found that on 052007, Charles Mosley was stopped by police at 341 Peachtree Road in reference to the sale of illegal narcotics. Upon contact subject refused a consent search and was later released. On 082606, Charles Mosley was stopped by police following a complaint of drug activity at 341 Peachtree Road. He was investigated and later released.

>On 111207, at approximately 2300 hours Sergeant Mark Simmons and the affiant went to 3646 Polo Club Boulevard to check the residence. Detectives observed a black Dodge Magnum parked in the driveway. The vehicle license plates number was 293-GXB.

>On 010908, at approximately 1100 hours the affiant observed a black Dodge Magnum bearing Kentucky tags 293-GXB at the intersection of New Circle Road and Russell Cave Road. The vehicle was driven by a male black subject who was last seen heading westbound on Hollow Creek Road.

*Affidavit in Support of and Petition of Search Warrant*, p. 2.

>Detective Lewis also advised that he had conducted the following independent investigation:

>On 101607, at approximately 0030 hours Detective Albert Dixon and the affiant went to 3646 Polo Club Boulevard. Upon checking the residence, the detectives located the garbage inside a green trash container at the curb out in front of the residence. The affiant removed one black trash bag from the container. A search of this trash bag revealed based on the training and knowledge of the affiant to be two small suspected marijuana blunts, a tissue paper containing a small amount of suspected marijuana, one corner baggie, one knotted baggie with a missing corner, and mail matter in the name of Tori Rodriguez along with the name of Thomas Ramey showing the address of 3646 Polo Club Boulevard. The evidence was booked in at police headquarters.

>On 011508, at approximately 0045 hours Detective Albert Dixon and the affiant went to 3646 Polo Club Boulevard. Upon checking the residence, the detectives located the garbage inside a green trash container at the curb out in front of the

>  residence. The affiant removed two black trash bags from the container. A search of one trash bag revealed based on the training and knowledge of the affiant to be eleven sandwich baggies, six of which had missing corners. Some contained a white residue substance. Also mail matter in the name of Tori Rodriguez, Billie Rodriguez, and Thomas Ramey showing the address of 3646 Polo Club Boulevard. The second trash bag revealed six sandwich baggies, four of which had missing corners. Some of these baggies contained a white residue substance. Mail matter in the name of Tori A. Rodriguez showing the address of 3646 Polo Club Boulevard. The evidence was booked in at police headquarters.

*Id.*

The form *Affidavit in Support of and Petition of Search Warrant* concludes with boiler plate language that the affiant has reasonable and probable cause to believe that grounds exist for the issuance of the requested search warrant, based on the aforementioned facts, information, and circumstances.

Based on the information contained in the foregoing affidavit, the Fayette District Court issued the search warrant on January 15, 2008, at 5:51 p.m., for the search of defendants' residence located at 3646 Polo Club Boulevard, Lexington, Kentucky. This search warrant was executed on January 16, 2008. The itemized list of sixteen (16) items found at defendants' residence, such as a baggie with 96.7 grams of crack cocaine, a knife with suspected cocaine residue, a mixing bowl with residue, two sets of digital scales and weights with suspected cocaine residue, various types of ammunition, a .25 caliber automatic handgun, and sandwich baggies, led to the present indictment.

The evidence seized from defendants' residence on January 16, 2008, is the subject of this motion to suppress.

### III. DEFENDANTS' MOTION TO SUPPRESS

In support of their motion to suppress the evidence seized from their residence on January 16, 2008, defendants maintain (1) that the search of their residence was conducted pursuant to a search warrant that was not supported by probable cause for said search in that the affidavit of Detective David Lewis failed to establish a sufficient nexus between the criminal activity and the residence, (2) that the affidavit was a "bare bones" affidavit under the analysis of United States v. Weaver, 99 F.3d 1372 (6th Cir. 1996), and (3) that the search warrant is not entitled to the "good

faith" exception to the exclusionary rule that was recognized in United States v. Leon, 468 U.S. 897, 906-25 (1984). Therefore, defendants contend that the search of their residence violated the Fourth Amendment and that all evidence obtained as a result of that search must be suppressed.

In response to the motion to suppress, the United States counters that there is a sufficient factual basis contained in the search warrant affidavit to establish probable cause to issue the search warrant, that the information contained in the search warrant affidavit was not stale, and that assuming arguendo that probable cause for the issuance of the search warrant for defendants' residence was lacking and/or that the information contained in the search warrant affidavit is deemed to be stale, this case falls within the "good faith exception" to the exclusionary rule that was recognized in United States v. Leon, 468 U.S. 897, 906-25 (1984). Therefore, under either scenario, the United States asserts that defendants' motion to suppress should be denied.

## Discussion/Analysis

**A.     Probable Cause**

The Fourth Amendment prohibits unreasonable searches and seizures. Evidence obtained by means of an unlawful search seizure by officers is not admissible against the accused in a criminal prosecution. *Mapp v. Ohio*, 367 U.S. 643 (1961). The question of whether evidence obtained by state officers and used against a defendant in a federal trial was obtained by unreasonable search and seizure is to be judged as if the search and seizure had been made by federal officers. *Preston v. United States*, 376 U.S. 364 (1964).

A basic principle of the Fourth Amendment is that for a search warrant to issue, there must be probable cause, i.e. whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. *United States v. Paymon*, 523 F. Supp. 2nd 584, 588 (E.D. Mich., 2007) citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983); see also *United States v. Shamaeizadeh*, 80 F.3d 1131, 1136 (6th Cir.1996). In order to establish probable cause, "there must ... be a nexus between the place searched and the evidence sought." *Paymon, supra,* citing *United States v. Carpenter*, 360 F. 3d 591, 594 (6th Cir., 2004) (en banc). "The critical element in a reasonable

search is not that the owner of property is suspected of a crime, but that there is a reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought." *Paymon* at 588.

In determining whether probable cause existed to believe that evidence of criminal activity was located in a particular place at the time the search warrant in question was issued, the courts must consider the "totality of the circumstances" presented in the search warrant affidavit. Illinois v. Gates, 462 U.S. 213, 230 (1983). "Probable cause exists when there is a `fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." United States v. Loggins, 777 F.2d 336, 338 (6th Cir. 1985) (per curiam).

An affidavit submitted in support of the application for a search warrant that states "suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge, is a 'bare bones' affidavit." *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996). Warrants are illegally issued if there was no showing of probable cause in the warrant affidavit. Vernonia School Dist. 47 J. v. Acton, 515 U.S. 646, 653 (1995). In the event that it is determined that a search warrant was issued in the absence of a showing of probable cause, then it must also be determined whether such defective search warrant should be excused under the "good faith exception" to the exclusionary rule recognized in United States v. Leon, supra.

In the present action, Detective Lewis submitted an affidavit to the Fayette District Court in support of his application for the search warrant. Summarizing the information contained in his affidavit, which was set out in greater detail above, Detective Lewis stated (1) that in early October of 2007, he had observed a black Dodge Magnum vehicle bearing Kentucky license plate number 293-GXB parked in front of a barber shop at 311 Race Street, (2) that there had been several arrests in this area of Third and Race Streets involving illegal drug sales, and (3) that he began to see this vehicle frequent this location quite often during the day and night. Detective Lewis also stated that in November of 2007, two other police detectives who were investigating narcotics activity observed

this same vehicle at Winchester and Zesta Place and that they followed it to the 400 block of Smith Street where it parked in an area where subjects congregate to sell illegal narcotics. Detective Lewis further stated that in November of 2007, he conducted a police computer check on this vehicle bearing Kentucky tags 293-GXB and learned that the registered owners were Charles Mosley and Tori Rodriguez and that their address was 3646 Polo Club Boulevard, Lexington, Kentucky.

Additionally, Detective Lewis stated that he learned that in August of 2006 and in May of 2007, Charles Mosley had been stopped by police at 341 Peachtree Road in reference to the sale of illegal narcotics; however, neither stop resulted in an arrest or a charge of illegal activity.

Detective Lewis also stated that on January 9, 2008, at approximately 1100 hours, he observed the defendants' vehicle at the intersection of New Circle Road and Russell Cave Road and that the vehicle was being driven by a male black subject who was last seen heading westbound on Hollow Creek Road.

Detective Lewis further stated that he had observed the defendants' vehicle parked in the driveway at their residence at 3646 Polo Club Boulevard and that on two different occasions, October 10, 2007, and January 15, 2008, he and other police detectives conducted garbage pulls from the trash container setting at the curb in front of the defendants' residence and that, based on his training and knowledge, these two garbage pulls contained evidence of illegal drug activity. Specifically, Detective Lewis stated that in the first garbage pull (October of 2007), he found "two small suspected marijuana blunts, a tissue paper containing a small amount of suspected marijuana, one corner baggie, one knotted baggie with a missing corner, and mail matter in the name of Tori Rodriguez along with the name of Thomas Ramey showing the address of 3646 Polo Club Boulevard." *Affidavit in Support of and Petition of Search Warrant*, p. 2. In the second garbage pull (January of 2008) Detective Lewis stated that he found in one trash bag "eleven sandwich baggies, six of which had missing corners. Some contained a white residue substance. Also mail matter in the name of Tori Rodriguez, Billie Rodriguez, and Thomas Ramey showing the address of 3646 Polo Club Boulevard." *Id.* In a second trash bag, he found "six sandwich baggies, four of which

had missing corners. Some of these baggies contained a white residue substance. Mail matter in the name of Tori A. Rodriguez showing the address of 3646 Polo Club Boulevard." *Id.*

To reiterate, the form *Affidavit in Support of and Petition of Search Warrant* concludes with boiler plate language that the affiant has reasonable and probable cause to believe that grounds exist for the issuance of the requested search warrant, based on the aforementioned facts, information, and circumstances.

The Magistrate Judge concludes that the foregoing *Affidavit in Support of and Petition of Search Warrant* does not contain information sufficient to establish probable cause for the issuance of a search warrant for a search of the defendants' residence. This conclusion is based on the following rationale:

1. All of the locations at which Detective Lewis states defendants' vehicle was observed (Third and Race Streets, in front of the barber shop at 311 Race Street, the intersection of Winchester Road and Zesta Place, the 400 block of Smith Street, and the intersection of New Circle Road and Russell Cave Road) are public thoroughfares.[1] The fact that a vehicle is simply *observed* on these streets, without more, does not mean that the owner or driver of that vehicle is guilty of illegal drug trafficking.

2. The affidavit does not state that at the times the defendants' vehicle was observed traveling and/or parked on the public thoroughfares listed above that either defendant Mosley or defendant Rodriguez was driving and/or a passenger or just sitting in said vehicle. In fact, the affidavit simply states that the vehicle was observed and does not identify the driver or occupants of the vehicle in any way. Thus, the driver/occupant of the vehicle at these times is unknown.

---

[1] Detective Lewis also states that he learned that in August of 2006 and in May of 2007, Charles Mosley was stopped at 341 Peachtree Road in reference to illegal drug activity. While Detective Lewis seems to imply that Charles Mosley was driving the black Dodge Magnum bearing Kentucky tags 293-GXB on the two occasions he was stopped at 341 Peachtree Road, the affidavit does not expressly make that statement. It is unclear from affidavit what vehicle, if any, Mosley was driving at the time of these two stops.

3. The affidavit contains no information from the affiant that he or an eyewitness or informant witnessed any drug trafficking activity associated with the defendants' vehicle, such as observations of drug sales being made from the vehicle. Thus, there is no information to connect the vehicle with any illegal drug trafficking.

4. The affidavit does not state that either defendant Mosley or defendant Rodriguez was observed participating in illegal drug trafficking, either in their residence at 3646 Polo Club Boulevard or elsewhere. The affidavit contains no statement by an eyewitness or an informant who has purchased drugs or witnessed any drug trafficking involving either of the defendants herein. Although Detective Lewis states that he learned that in August of 2006 and in May of 2007, Charles Mosley was stopped at 341 Peachtree Road in reference to illegal drug activity, the affidavit also states that he was investigated and released. Thus, Charles Mosley was not charged with any criminal offense related to either of the stops at 341 Peachtree Road in 2006 and 2007.

5. The affidavit contains no statement by Detective Lewis or an eyewitness or an informant concerning any drug buys being made from the defendants' residence at 3646 Polo Club Boulevard, and it contains no statement that there were persons observed visiting the residence or that there were deliveries of packages to the residence, information that could be associated with drug trafficking activity. There simply was no statement of any observation of any possible drug trafficking activity connected to defendants' residence.

6. Although the two garbage pulls from defendants' residence did contain some evidence that might be related to illegal drugs, these two garbage pulls also contained evidence indicating that individuals other than the defendants also resided at 3646 Polo Club Boulevard. Specifically, discarded mail that was addressed to Thomas Ramey and Billie Rodriguez at 3646 Polo Club Boulevard was found in these garbage pulls. Therefore, the evidence concerning the suspected two marijuana joints and the plastic baggies with cut corners and white residue that might be cocaine could just have easily belonged to the other individuals (Thomas Ramey and Billie Rodriguez) associated with defendants' residence and could just have easily been placed in the trash by these

9

other individuals. Additionally, although evidence that could be associated with illegal drug trafficking was found in both the garbage pull on October 16, 2007, and the garbage pull on January 15, 2008, the affidavit contained no statement that the evidence of possible drug activity had been tested to verify the presence of illegal drugs. While there might have been insufficient time to have had the evidence tested that was obtained in the garbage pull on January 15, 2008, there was more than ample time to have had the evidence of suspected drug activity tested that was obtained in the garbage pull in October of 2007. Nevertheless, the affidavit contains no statement that any of this evidence was tested to determine the presence of illegal drugs.

7. Concerning the two garbage pulls from defendants' trash container, Detective Lewis states that based on his "training and knowledge," the defendants' trash contained evidence of drug trafficking activity. However, the affidavit contains only a conclusory statement "based on the training and knowledge of the affiant" and contains no detailed information describing any factual background about Detective Lewis's training in narcotics investigations, the length of time he has been a detective working in narcotics investigations, how he acquired his prior knowledge that would enable him to identify suspected evidence of drug trafficking activity, and/or how the items found are indicative of illegal drug activity. The statement as to his "training and knowledge" is simply an unsupported, bare-bones statement.

Based on the foregoing reasons, the Magistrate Judge concludes that search warrant affidavit in question contained no substantive information linking the alleged drug trafficking with 3646 Polo Club Boulevard. Therefore, the search warrant affidavit failed to establish a nexus between the illegal activity and the premises to be searched; hence, the search warrant affidavit failed to provide a showing of probable cause for the issuance of the subject search warrant.

**B.     Stale information**

Defendants also contend that the search warrant affidavit contained stale information that was insufficient to support a finding of probable cause. More particularly, defendants assert that the information concerning the observations of their vehicle in October and November of 2007 in

various locations and the information that defendant Mosley was stopped in 2006 and 2007 at 341 Peachtree Street and investigated for suspected drug activity (but was never charged with any criminal offense) was too remote in time to establish that there was probable cause in January of 2008 for the issuance of a search warrant for a search of their residence for evidence of illegal drug activity.

In response to this argument, the United States submits that the information contained in the search warrant affidavit was not stale in that the information obtained from the first trash pull was similar and consistent with the new information contained in the second trash pull, which demonstrates the criminal activity was ongoing at the residence and the type of activity remained the same. Additionally, the United States notes that the affidavit included information recovered from the trash pull the very day it was obtained; therefore, the evidence recovered in the October 16, 2007 trash pull corroborated the evidence recovered on January 15, 2008. See, *United States v. Rodriguez-Suazo*, 346 F.3d 637 (6th Cir. 2003). For these reasons, the United States contends that there was no staleness in the information provided to Judge Ransdell and that the evidence is valid and admissible.

Assuming *arguendo* that the information contained in the search warrant affidavit was not stale, the Magistrate Judge concludes that even when all of the information contained in the search warrant affidavit is taken into consideration, the search warrant affidavit still fails to establish probable cause for the issuance of a search warrant for the defendants' residence. Thus, the Magistrate Judge need not address defendants' staleness argument on the merits.

**C.     Exception to the exclusionary rule**

In *United States v. Leon*, 468 U.S. 897, 906-25 (1984), the United States Supreme Court established the rule that even when it is determined that a search warrant has been issued in the absence of probable cause, depending on the circumstances of the individual case, a "good faith exception" to the exclusionary rule may be applicable that would operate to prevent the suppression of evidence seized in violation of the Fourth Amendment. Subsequently, in *United States v. Leake*,

998 F.2d 1359 (6th Cir. 1993), the Sixth Circuit held that where an officer is deemed to know the requirements of a valid search warrant affidavit, fails to fulfill those requirements and then relies upon a warrant subsequently issued, such an officer cannot take advantage of the *Leon* exception. *Id.* at 1367. Additionally, as seen in *United States v. Baxter*, 889 F.2d 731 (6th Cir. 1989), the *Leon* exception is not applicable where the error was committed by the officer, as opposed to the judicial authority issuing the warrant, who should have realized the inadequacy of the affidavit presented to obtain the search warrant. *Id.* at 734.

In the present case, Detective David Lewis prepared the affidavit submitted in support of the search warrant, obtained the search warrant, and executed the search warrant. Given the multiple deficiencies in the search warrant affidavit, as previously described above herein in greater detail, the Magistrate Judge concludes that the affidavit in support of the search warrant in this case was so lacking in indicia of probable cause as to render his reliance on the warrant unreasonable. The Magistrate Judge concludes that a reasonable police officer would have known that the search warrant affidavit at issue did not contain sufficient information to establish probable cause for the issuance of the search warrant in question. This conclusion is based on the fact that at the outset, Detective Lewis did not have probable cause to stop the Dodge Magnum vehicle, since he did not see or have any other eyewitness accounts of any drug transactions having any connection to the defendants' vehicle, having any connection to the defendants, or having any connection to the defendants' residence. The only information of possible drug trafficking activity was obtained from the trash pulls from the defendants' residence, a place where it appears that at least two other individuals resided, at least at one time, since mail matter addressed to these other two individuals (Thomas Ramey and Billie Rodriguez) was also found in the defendants' trash container.

It is presumed that Detective Lewis knew or should have known that a search warrant affidavit must contain information that connects the premises to be searched with the illegal activity alleged. To reiterate, for all of the reasons stated above, the affidavit failed to establish a sufficient nexus between illegal activity and the place to be searched. Therefore, Detective Lewis was not

objectively reasonable in his reliance on the search warrant. Consequently, the Magistrate Judge concludes that since Detective Lewis prepared an affidavit that a reasonably well-trained officer would know was deficient, presented that affidavit to a Fayette District Court Judge and then acted upon the warrant that was subsequently issued, the *Leon* exception to the exclusionary rule cannot be applied to this case.

The government cannot take advantage of the "good faith exception" of *Leon* in this case because, for all of the reasons previously stated above, the search warrant affidavit was facially deficient. Thus, this case presents a situation where the officer's reliance on the warrant was not in good faith or objectively reasonable. *Leon* at 923. "The parameters of 'objective reasonableness' in the good-faith context have been explored primarily in relation to whether an affidavit established a sufficient nexus between illegal activity and a place to be searched." *United States. v. Hython*, 443 F.3d 480, 484 (6th Cir. 2006); *see also: United States v. Laughton*, 409 F.3d 744, 751 (6th Cir. 2005) (no modicum of evidence connected defendant, criminal activity, and address to be searched); *United States v. Van Shutters*, 163 F.3d 331, 337 (6th Cir. 1998) (affidavit did not establish a connection between target of investigation and home to be searched).

Accordingly, for all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the defendants' motion to suppress the evidence seized from the search of their residence at 3646 Polo Club Boulevard, Lexington, KY on January 16, 2008 [DE ##18, 21] be **GRANTED**.

The Clerk of the Court shall forward a copy of this Proposed Findings of Fact and Recommendation to the respective parties. Any objections to this Report and Recommendation shall be filed within ten (10) days of the date of this Report and Recommendation and any response to objections filed shall be filed within five (5) days thereafter. In the absence of any objections filed hereto, a party waives the right to raise the objections in the Court of Appeals. 28 U.S.C. section

636(b)(1)(B); <u>Thomas v. Arn</u>, 728 F.2d 813 (6th Cir. 1984), <u>affirmed</u>, 474 U.S. 140 (1985); <u>Wright v. Holbrook</u>, 794 F.2d 1152, 1154-55 (6th Cir. 1986). Fed.R.Civ.P. 72(b).

This 31st day of March, 2008.

Signed By:
<u>James B. Todd</u>
United States Magistrate Judge